2025 IL App (4th) 250657-U

NO. 4-25-0657

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

FILED
October 10, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* T.C., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Knox County |
| Petitioner-Appellee, | ) | No. 23JA37 |
| v. | ) | |
| Rebecca S., | ) | Honorable |
| Respondent-Appellant). | ) | Chad M. Long, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Presiding Justice Harris and Justice Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court granted appellate counsel's motion to withdraw and affirmed
the trial court's judgment, finding no issue of arguable merit could be raised on
appeal.

¶ 2    In July 2023, the State filed a petition alleging T.C. (born in July 2009), the minor

child of respondent mother, Rebecca S., was neglected because his environment was injurious to

his welfare (705 ILCS 405/2-3(1)(b) (West 2022)). The trial court found T.C. was neglected and

made him a ward of the court.

¶ 3    In December 2024, the State petitioned to terminate respondent's parental rights.

The trial court granted the petition, finding respondent was an unfit parent pursuant to section

1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2024)) and it was in T.C.'s best interests to

terminate her parental rights. Respondent appealed.

¶ 4    In August 2025, appellate counsel moved to withdraw as counsel and filed an

accompanying memorandum, asserting no arguably meritorious issue could be raised on appeal. Respondent was notified of her right to respond but did not do so. For the following reasons, we grant the motion to withdraw and affirm the trial court's judgment.

¶ 5                                  I. BACKGROUND

¶ 6          On July 10, 2023, the State filed a petition alleging T.C. was neglected because his environment was injurious to his welfare. The petition alleged an incident of domestic battery occurred between respondent and T.C.'s father, Steven C., in the presence of T.C. and his sibling, R.C. The responding officer observed "bruising on the left side of [R.C.'s] neck that was purple, red and brown." Respondent told the responding officer Steven picked up R.C. by the neck. Steven was arrested and charged with aggravated battery to a child and two counts of domestic battery. The record shows T.C. was 13 years old and R.C. was 2 years old when the altercation occurred.

¶ 7          Respondent initially obtained an emergency order of protection against Steven, but she allowed it to lapse, and Steven continued to live with her after he was released from jail. Respondent submitted to drug tests on May 18, 2023, and May 25, 2023, and she tested positive for methamphetamine and amphetamine both times. Respondent refused to cooperate with the Illinois Department of Children and Family Services (DCFS), submit to further drug testing, or seek medical treatment for R.C. The trial court found there was probable cause to believe T.C. was neglected and placed his temporary custody with DCFS.

¶ 8          On October 3, 2023, the trial court conducted an adjudicatory hearing, where respondent stipulated she witnessed Steven "lift [R.C.] up by his neck," permitted Steven to live with her after he was released from jail, and tested positive for methamphetamine and amphetamine twice in May 2023. The court accepted the stipulation and found T.C. neglected.

- 2 -

After the dispositional hearing on November 2, 2023, the court found respondent unfit and granted T.C.'s guardianship to DCFS.

¶ 9　　　　On December 4, 2024, the State filed a petition to terminate respondent's parental rights, alleging she failed to maintain a reasonable degree of interest, concern, or responsibility as to T.C.'s welfare (750 ILCS 50/1(D)(b) (West 2024)), make reasonable efforts toward T.C.'s return during the nine months from October 4, 2023, to July 4, 2024 (750 ILCS 50/1(D)(m)(i) (West 2024)), and make reasonable progress toward T.C.'s return during the same nine-month period (750 ILCS 50/1(D)(m)(ii) (West 2024)).

¶ 10　　　　On May 15, 2025, the trial court conducted a fitness hearing. Dan Powell, a DCFS caseworker, testified he was assigned to T.C.'s case in July 2023. In August 2023, Powell advised respondent that DCFS recommended she complete substance abuse services, mental health services, and a domestic violence program and maintain stable housing and income. Powell gave respondent the necessary information to contact the service providers and schedule appointments. According to Powell, respondent simply needed to "call their phone number and schedule the appointment."

¶ 11　　　　Powell testified T.C. was autistic, nonverbal, and "a very, very high need youth" who could not be placed in a standard foster home. Eventually, Powell's involvement in T.C.'s case shifted to focus on supporting T.C.'s transition to a 24-hour care facility and meeting his needs as necessary, while another DCFS caseworker, Heather Stokes, took over the responsibilities of T.C.'s case regarding respondent.

¶ 12　　　　Stokes testified she had been working on T.C.'s case for one year and eight months at the time of the hearing. By then, T.C. was 15 years old, R.C. was 4 years old, and they had been in the care of DCFS for approximately two years. She received the case in October

2023. When Stokes became involved, respondent was expected to complete a domestic violence program, mental health services, substance abuse treatment, and parenting classes and maintain stable housing and employment. She was also required to comply with random drug drops. These services were necessary because they focused on correcting the circumstances that resulted in T.C.'s removal from respondent's care. During the nine-month period from October 4, 2023, to July 4, 2024, respondent did not complete any domestic violence services. She did not complete mental health services. She was not participating in substance abuse treatment, and she did not comply with her random drug drops. Stokes testified respondent missed 32 out of 36 drops during the specified nine-month period. Stokes repeatedly emphasized to respondent the importance of completing her drug drops. At no point did respondent indicate she was having difficulty getting to the site and completing her drops. Respondent began taking parenting classes, but she was unenrolled due to multiple absences. Respondent maintained employment throughout the case, and she consistently attended supervised visits with T.C. However, she continued to live with Steven in a house that she acknowledged was not an appropriate placement for T.C.

¶ 13　　　　After Stokes's testimony, the State asked the trial court to take judicial notice of its permanency review order, which found respondent did not make reasonable progress or efforts toward regaining custody of T.C., and Knox County case Nos. 25-CF-233, 24-DV-140, 23-CF-247, and 23-OP-113, all of which involved either respondent or Steven. The court agreed to take judicial notice of its files, asserting, "[T]he files at least indicate an ongoing pattern of involvement with the court system and law enforcement with allegations of domestic violence."

¶ 14　　　　The trial court found the State proved by clear and convincing evidence respondent was an unfit parent because she failed to make reasonable efforts to remedy the

conditions leading to T.C.'s removal from her care during the nine-month period from October 4, 2024, to July 4, 2024, make reasonable progress toward T.C.'s return during the same period, or maintain a reasonable degree of interest, concern, or responsibility as to T.C.'s welfare. The court observed T.C. came into DCFS's custody due to domestic violence and respondent's drug use, but respondent failed to complete domestic violence or substance abuse services, and she refused to comply with drug drops. The court emphasized respondent completed just 4 out of 36 drug drops during the nine-month period in question. Respondent did not complete parenting classes during the same nine-month period. Respondent did not obtain housing suitable for T.C.'s return, and she continued to live with Steven, whose acts of violence contributed to T.C.'s removal from respondent's care.

¶ 15        During the best interests hearing on June 3, 2025, Stokes testified T.C. had been living in a facility for youth with developmental disabilities such as autism for over a year. The facility provided structure and programming aimed at helping T.C. become more independent, such as teaching him how to shower himself and make his own food. T.C. was attending school, and the facility met all his medical needs. The facility provided T.C. with adequate food, shelter, clothing, and healthcare, and Stokes believed T.C. felt safe there. T.C. appeared "very comfortable" and "very happy" at the facility. Stokes testified the facility would begin transitioning T.C. into adult care when he turned 18. T.C. would receive help establishing a guardian of the state to serve as his advocate and aid in making future decisions. Stokes did not have any concerns with T.C.'s current placement. Stokes testified respondent consistently visited T.C., brought him presents for his birthday and Christmas, and occasionally took him shopping. However, Stokes recommended the trial court terminate respondent's parental rights due to her failure to complete her service plan obligations and the ongoing domestic violence between her

and Steven.

¶ 16    Respondent testified she supported DCFS's plan for the facility to help T.C. work toward independent living, but she wanted to continue visiting him and taking him on outings, even after he turned 18 years old. Respondent testified she brought gifts and food every time she visited T.C. Respondent asserted she completed a parenting course since the fitness hearing, and during visits, she put into practice the skills she learned in those classes.

¶ 17    The trial court found it was in T.C.'s best interests to terminate respondent's parental rights. The court acknowledged respondent consistently attended visits with T.C., but it emphasized the case had been pending for nearly two years, and during that time, respondent failed to address the drug use and domestic violence that caused T.C. to be removed from her care. The court highlighted T.C.'s current placement gave him adequate housing, food, and clothing, and it did not expose him to domestic violence. T.C. had familiarity and a sense of attachment with the facility's staff and the teachers at his school. Additionally, T.C.'s current placement could facilitate his transition into adulthood while preserving his comfort and familiarity.

¶ 18    This appeal followed.

¶ 19                                    II. ANALYSIS

¶ 20    In August 2025, respondent's appointed appellate counsel filed a motion for leave to withdraw as counsel and attached a supporting memorandum of law, citing *Anders v. California*, 386 U.S. 738 (1967). Respondent did not file a response. Appellate counsel argues no arguably meritorious issue can be raised on appeal. We agree.

¶ 21                              A. Standard of Review

¶ 22    To terminate an individual's parental rights, the State must first show the parent is

an "unfit person" by clear and convincing evidence and then show that terminating their parental rights serves the child's best interests by a preponderance of the evidence. *In re D.F.*, 201 Ill. 2d 476, 494-95 (2002); *In re D.T.*, 212 Ill. 2d 347, 366 (2004). "The trial court is given broad discretion and great deference in matters involving minors." *In re E.S.*, 324 Ill. App. 3d 661, 667 (2001). We will not reverse a trial court's finding of parental unfitness unless it is against the manifest weight of the evidence, as such a determination "involves factual findings and credibility determinations that the trial court is in the best position to make." *In re Ta. T.*, 2021 IL App (4th) 200658, ¶ 48. "A decision is against the manifest weight of the evidence when the opposite conclusion is clearly apparent." *Ta. T.*, 2021 IL App (4th) 200658, ¶ 48.

¶ 23                      B. The Trial Court's Unfitness Finding

¶ 24           A parent is an "unfit person" under the Adoption Act if they failed to make reasonable progress toward the child's return during any nine-month period following the adjudication of neglect. 750 ILCS 50/1(D)(m)(ii) (West 2024). "Reasonable progress" is an objective standard. *In re F.P.*, 2014 IL App (4th) 140360, ¶ 88. A parent makes reasonable progress toward reunification when "the progress being made *** is sufficiently demonstrable and of such a quality that the court, in the *near future*, will be able to order the child returned to parental custody." (Emphasis in original.) *In re L.L.S.*, 218 Ill. App. 3d 444, 461 (1991).

¶ 25           Here, respondent's service plan recommended, *inter alia*, she comply with drug drops, maintain stable housing, and complete substance abuse, domestic violence, and mental health services. During the nine months from October 4, 2023, to July 4, 2024, respondent did not complete any of these recommendations. T.C. was removed from respondent's care due to her drug use and a domestic violence incident. Respondent subsequently refused to comply with drug drops, completing only 4 out of 36 scheduled drops during the nine months in question.

Respondent did not complete any substance abuse services. Respondent did not complete any mental health services. Respondent continued to live with Steven after T.C. was placed in DCFS's custody, and the record indicates domestic violence continued to be an issue in their relationship. Respondent eventually completed parenting classes, but she did so after the fitness hearing. Ultimately, respondent failed to address the substance abuse and domestic violence that resulted in T.C.'s removal from her custody, despite receiving the time and resources to do so. Accordingly, the trial court's unfitness finding was not against the manifest weight of the evidence, as respondent failed to fulfill any of the recommended services during the relevant time frame, and T.C. was never close to returning to her care. 750 ILCS 50/1(D)(m)(ii) (West 2024); *L.L.S.*, 218 Ill. App. 3d at 461. We agree with appellate counsel no issue of arguable merit can be raised regarding the court's fitness finding.

¶ 26                    C. The Trial Court's Best Interests Finding

¶ 27           We also find it would be frivolous to argue the trial court's best interests finding was in error. After a parent is found unfit, "the focus shifts to the child." *D.T.*, 212 Ill. 2d at 364. The issue ceases to be "whether parental rights can be terminated" and becomes "whether, in light of the child's needs, parental rights should be terminated." (Emphases omitted.) *D.T.*, 212 Ill. 2d at 364. The trial court will consider the factors set forth in section 1-3(4.05) of the Juvenile Court Act of 1987 (705 ILCS 405/1-3(4.05) (West 2024)). See *In re T.A.*, 359 Ill. App. 3d 953, 959-60 (2005). Those factors include the child's physical safety and welfare; the development of the child's identity; the child's familial, cultural, and religious background and ties; the child's sense of attachments, including where the child feels loved, attached, and valued; the child's sense of security, familiarity, and continuity of affection; the child's wishes and long-term goals; the child's community ties; the child's need for permanence; and the uniqueness

of every family and each child. 705 ILCS 405/1-3(4.05) (West 2024). We will not overturn a court's best interests finding unless it is against the manifest weight of the evidence. *In re Jay. H.*, 395 Ill. App. 3d 1063, 1071 (2009).

¶ 28 The evidence shows the best interests factors support the termination of respondent's parental rights. When the best interests hearing occurred, T.C. had been living in a 24-hour care facility specially equipped to care for young people with autism and other developmental challenges for more than a year. The facility provided T.C. with food, shelter, clothing, and physical safety, and it ensured his medical needs were met. According to Stokes, T.C. seemed "very comfortable" and "very happy" at the facility, and he was bonded with the staff. The facility helped T.C. work toward increased independence, and it would connect T.C. with a guardian of the state once he turned 18 by serving as his advocate and aiding him in making future decisions. Stokes testified she did not have any concerns with T.C.'s current placement. While respondent consistently visited T.C., brought him presents, and took him on outings, she refused to remedy the drug use and domestic violence that caused T.C. to be removed from her care. Based on the evidence presented, the trial court's best interests finding was not manifestly erroneous, as the opposite conclusion was not clearly apparent. *Jay. H.*, 395 Ill. App. 3d at 1071. We agree with appellate counsel that no arguably meritorious issue can be raised on appeal.

¶ 29                                    III. CONCLUSION

¶ 30 For the reasons stated, we grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 31 Affirmed.