2025 IL App (4th) 250656-U

NO. 4-25-0656

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

FILED
November 12, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* R.C., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Knox County |
|       Petitioner-Appellee, | ) | No. 23JA36 |
|       v. | ) | |
| Rebecca S., | ) | Honorable |
|       Respondent-Appellant). | ) | Chad M. Long, |
| | ) | Judge Presiding. |

---

JUSTICE DOHERTY delivered the judgment of the court.
Justices Lannerd and Grischow concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Because no issue of arguable merit can be raised on appeal, appellate counsel's motion to withdraw is granted, and the trial court's judgment is affirmed.

¶ 2    Following the filing of a petition by the State, the trial court found that respondent Rebecca S. was an unfit parent pursuant to section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2024)) and that it was in R.C.'s best interest to terminate her parental rights. Respondent now appeals.

¶ 3    Respondent's appellate counsel moved to withdraw as counsel and filed an accompanying memorandum, asserting no arguably meritorious issue could be raised on appeal. Respondent was notified of her right to respond but did not do so. For the following reasons, we grant the motion to withdraw and affirm the trial court's judgment.

¶ 4                                    I. BACKGROUND

¶ 5    We note that a different panel of this court has already issued its disposition in respondent's appeal concerning her other child, T.C., and granted appellate counsel's motion to withdraw and affirmed the trial court's judgment. See *In re T.C.*, 2025 IL App (4th) 250657-U, ¶ 30. Because *T.C.* and this case were consolidated for hearing and disposition before the trial court and share the same common law record and lower court rulings, we borrow heavily from the recitation of facts set forth in that disposition, while addressing the specifics unique to this case.

¶ 6    R.C.'s father, Steven C., has his own appeal (No. 4-25-0641), which is unrelated to this appeal.

¶ 7                              A. Juvenile Petition

¶ 8    On July 10, 2023, the State filed a petition alleging that R.C. was neglected because his environment was injurious to his welfare pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2022)). Specifically, the petition alleged that an incident of domestic battery occurred between respondent and R.C.'s father, Steven C., in the presence of R.C. and his older sibling, T.C. The responding officer observed "bruising on the left side of [R.C.'s] neck that was purple, red and brown." Respondent told the responding officer that Steven had picked up R.C. by the neck. Steven was arrested and charged with aggravated battery to a child and two counts of domestic battery. R.C. was 2 years old and T.C. was 13 years old when the incident occurred.

¶ 9    Respondent initially obtained an emergency order of protection against Steven, but she allowed it to lapse; he continued to live with her upon his release from jail. Respondent submitted to drug tests on May 18 and 25, 2023, and she tested positive for methamphetamine and amphetamine both times. She refused to cooperate with the Illinois Department of Children and Family Services (DCFS), refused to submit to further drug testing, and refused to seek medical

treatment for R.C. The trial court found there was probable cause to believe that R.C. was neglected and placed him in the temporary custody of DCFS.

¶ 10                                B. Adjudicatory Hearing

¶ 11          The trial court conducted an adjudicatory hearing on October 3, 2023, at which time respondent stipulated that she had witnessed Steven "lift [R.C.] up by his neck," permitted Steven to live with her after he was released from jail, and tested positive for methamphetamine and amphetamine twice in May 2023. The court accepted the stipulation and found that R.C. had been neglected. After the dispositional hearing on November 2, 2023, the court found respondent unfit and granted R.C.'s guardianship to DCFS.

¶ 12                         C. Petition to Terminate Parental Rights

¶ 13          On December 4, 2024, the State filed a petition to terminate respondent's parental rights, alleging that she failed to (1) maintain a reasonable degree of interest, concern, or responsibility as to R.C.'s welfare (750 ILCS 50/1(D)(b) (West 2024)), (2) make reasonable efforts toward R.C.'s return during the nine months from October 4, 2023, to July 4, 2024 (*id.* § 50/1(D)(m)(i)), and (3) make reasonable progress toward R.C.'s return during the same nine-month period (*id.* § 50/1(D)(m)(ii)).

¶ 14                                D. Fitness Hearing

¶ 15          A fitness hearing was held on May 15, 2025, during which DCFS caseworker Dan Powell testified that he had been assigned to R.C.'s case in July 2023. According to Powell, he informed respondent in August of that year that DCFS recommended that she complete substance abuse and mental health services and a domestic violence program; it also recommended that she maintain stable housing and income. Powell said he also provided respondent with information to contact the service providers and schedule appointments, such that she simply needed to "call their

phone number and schedule the appointment."

¶ 16        Heather Stokes, the DCFS caseworker who took over R.C.'s case about 20 months prior to the fitness hearing, testified that by the time she received the case in October 2023, R.C. was four years old and had been in the care of DCFS for approximately two years. When Stokes became involved, respondent was expected to complete a domestic violence program, mental health services, substance abuse treatment, and parenting classes and maintain stable housing and employment. She was also required to comply with random drug tests. These services were deemed necessary because they focused on correcting the circumstances that resulted in R.C.'s removal from respondent's care.

¶ 17        According to Stokes, during the nine-month period from October 4, 2023, to July 4, 2024, respondent did not complete any domestic violence or mental health services, and she was not participating in substance abuse treatment or complying with random drug tests. Stokes also testified that respondent missed 32 out of 36 drug tests during the specified nine-month period, despite Stokes having repeatedly emphasized to her the importance of completing them. At no point did respondent indicate that she was having difficulty getting to the site or completing her drug tests. Stokes testified that respondent began taking parenting classes, but she was unenrolled due to multiple absences. Respondent maintained employment throughout the case, and she consistently attended supervised visits with R.C. However, she continued to live with Steven in a house that she acknowledged was not an appropriate placement for R.C.

¶ 18        Following Stokes's testimony, the State asked the trial court to take judicial notice of its permanency review order, which found that respondent did not make reasonable progress or efforts toward regaining custody of R.C., and of Knox County case Nos. 25-CF-233, 24-DV-140, 23-CF-247, and 23-OP-113, all of which involved either respondent or Steven. The court took

- 4 -

judicial notice of these files, asserting, "[T]he files at least indicate an ongoing pattern of involvement with the court system and law enforcement with allegations of domestic violence."

¶ 19 A copy of the May 1, 2025, Knox County permanency review hearing court report was also submitted, which stated that R.C. was "not having any developmental issues and [had] started pre-school" and that he was "on track for his age." The report further said he "has had no behaviors other than typical behaviors for his age."

¶ 20        E. Fitness Ruling

¶ 21 The trial court found that the State had proven by clear and convincing evidence that respondent was an unfit parent because she failed to (1) make reasonable efforts to remedy the conditions leading to R.C.'s removal from her care during the nine-month period from October 4, 2023, to July 4, 2024, (2) make reasonable progress toward R.C.'s return during the same period, or (3) maintain a reasonable degree of interest, concern, or responsibility as to R.C.'s welfare. The court observed that R.C. came into DCFS's custody due to domestic violence and respondent's drug use, but that she had failed to complete domestic violence or substance abuse services and refused to comply with drug tests. The court emphasized that respondent had completed just 4 out of 36 drug tests during the nine-month period in question, did not complete parenting classes during the same nine-month period, and did not obtain housing suitable for R.C.'s return. She continued to live with Steven, whose acts of violence contributed to R.C.'s removal from respondent's care.

¶ 22        F. Best-Interest Hearing

¶ 23 During the best-interest hearing on June 3, 2025, Stokes testified that R.C. had been living in a licensed foster home for about a month. Earlier, he had been placed with one of his teachers on a temporary emergency basis and had "spent a lot of time" with her family; one of the

foster parents was R.C.'s teacher's sister. Stokes described the home as a "very nice house" with a pool and said that R.C. had his own bedroom. According to Stokes, R.C. referred to his foster parents as "mom and dad." He had been enrolled in preschool for the fall and was attending a DCFS day care run by the foster mother. Stokes said that R.C. seemed "very comfortable" interacting with both foster parents, and she noted that they had two other children who were both older than R.C.

¶ 24        Stokes testified that R.C. had experienced behavioral problems in his prior homes, as "he was biting other children and smacking and hitting and wasn't listening to the foster parents." Now, she said, he was "doing much better and none of those behaviors are occurring anymore." She testified that R.C. seemed to be happy with his foster home and foster parents and that the foster parents had "stated that they would provide permanency" for R.C.

¶ 25        Stokes testified that respondent consistently visited R.C., brought him presents for his birthday and Christmas, and occasionally took him shopping. However, Stokes recommended that respondent's parental rights be terminated due to her failure to complete her service plan obligations and the ongoing domestic violence between respondent and Steven.

¶ 26        Respondent testified but made no specific remarks concerning R.C., other than that she wanted to continue to utilize the skills she was learning in her parenting classes to help her children. She also testified that she brought gifts and food every time she visited R.C.

¶ 27        A copy of the May 16, 2025, Knox County best-interest report was also admitted, which stated that R.C. had been placed in his current foster home on May 5, 2025, and that the home was "deemed to be [a] safe and appropriate environment" for him. As to respondent, the report noted that "actions to correct why the youth have come into care have not been corrected." It further noted that there had been three additional incidents involving domestic violence since

the children were taken into DCFS's care. It also stated that respondent "did not have adequate housing for the youth to return home to." Finally, the report observed that respondent's visitation time had not been increased "due to lack of progress in services and refraining from domestic instances." The report recommended that respondent's parental rights be terminated.

¶ 28                    G. Termination of Parental Rights Order

¶ 29        The trial court found it was in R.C.'s best interest to terminate respondent's parental rights. The court acknowledged that respondent consistently attended visits with R.C., but it emphasized that during the nearly two years the case had been pending, respondent had failed to address the drug use and ongoing domestic violence that caused R.C. to be removed from her care. The court stressed that R.C.'s current foster placement gave him adequate housing, food, and clothing and it did not expose him to domestic violence. The court also found that R.C.'s current foster placement had already created a sense of attachment and that he was now referring to the foster parents as mom and dad. According to the court, R.C. needed and wanted stability, and it did not "think that kicking the can down the road and again expecting the parents to do what they've had ample time to do is going to provide [the children] any of that stability or permanency."

¶ 30        This appeal followed.

¶ 31                            II. ANALYSIS

¶ 32        In August 2025, respondent's appointed appellate counsel filed a motion for leave to withdraw as her counsel and attached a supporting memorandum of law, citing *Anders v. California*, 386 U.S. 738 (1967), and *People v. Jones*, 38 Ill. 2d 384 (1967). He argued that "any request for review in this case would be without merit." This court granted respondent leave to file a response to the motion for leave to withdraw on or before September 9, 2025; none was filed.

¶ 33                            A. *Anders* Motion

¶ 34        The *Anders* procedure pertaining to an appellate counsel's motion to withdraw applies to findings of parental unfitness and termination of parental rights. *In re S.M.*, 314 Ill. App. 3d 682, 685 (2000). Under *Anders*, counsel must file a motion to withdraw and a brief outlining any issues in the record which might arguably support the appeal, explaining why counsel finds those issues frivolous, and concluding that the case presents no viable grounds for appeal. *Id.* at 685 This court will then review the brief and record to determine whether the available arguments are wholly without merit. *People v. Meeks*, 2016 IL App (2d) 140509, ¶ 10.

¶ 35        Here, appellate counsel suggests any appeal in this cause would be frivolous because there are no viable issues to raise in this case. After a full review of the record, counsel identified several potential issues but found none of them sufficient to overturn or challenge the trial court's findings. Finding nothing in the record from which it could reasonably be argued the trial court's fitness and best-interest decisions were against the manifest weight of the evidence, counsel asks to withdraw.

¶ 36        We now evaluate counsel's contentions.

¶ 37                            B. Unfitness Finding

¶ 38        At the fitness portion of the hearing on the termination of parental rights, it is the State's obligation to prove by clear and convincing evidence that the parent is "unfit" under one or more of the grounds provided by section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2024). *In re Al. P.*, 2017 IL App (4th) 170435, ¶ 40; see 705 ILCS 405/2-29(2), (4) (West 2024)). In reviewing the trial court's decision, we do not retry the case. Instead, we are limited to deciding whether the trial court's finding of unfitness is against the manifest weight of the evidence. *In re J.H.*, 2020 IL App (4th) 200150, ¶ 68. A decision is against the manifest weight of the evidence only if the facts clearly demonstrate that the trial court should have reached the opposite result.

*In re J.B.*, 2019 IL App (4th) 190537, ¶ 33.

¶ 39 A parent who fails to make reasonable progress toward the child's return during any nine-month period following the adjudication of neglect is an "unfit person" under section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2024)). "Reasonable progress" is an objective standard. *In re F.P.*, 2014 IL App (4th) 140360, ¶ 88. A parent makes reasonable progress toward reunification when "the progress being made *** is sufficiently demonstrable and of such a quality that the court, in the *near future*, will be able to order the child returned to parental custody." (Emphasis in original.) *In re L.L.S.*, 218 Ill. App. 3d 444, 461 (1991).

¶ 40 Here, respondent's service plan recommended, *inter alia*, that she comply with drug testing, maintain stable housing, and complete substance abuse, domestic violence, and mental health services. During the nine months from October 4, 2023, to July 4, 2024, however, respondent did not complete any of these recommendations. R.C. was removed from respondent's care due to her drug use and a domestic violence incident. Respondent subsequently refused to comply with drug testing, completing only 4 out of 36 scheduled tests during the nine months in question. Respondent did not complete any substance abuse or mental health services. She continued to live with Steven after R.C. was placed in DCFS's custody, and the record indicated domestic violence continued to be an issue in their relationship. She eventually completed parenting classes, but only after the fitness hearing. Ultimately, respondent failed to address the substance abuse and domestic violence issues that resulted in R.C.'s removal from her custody, despite receiving the time and resources to do so.

¶ 41 Accordingly, the trial court's unfitness finding was not against the manifest weight of the evidence because respondent failed to fulfill any of the recommended services during the relevant time frame and R.C. was never close to returning to her care. See 750 ILCS 50/1(D)(m)(ii)

(West 2024); *L.L.S.*, 218 Ill. App. 3d at 461. We agree with appellate counsel that no issue of arguable merit can be raised regarding the court's fitness finding.

¶ 42                                C. Best-Interest Finding

¶ 43         Counsel further argues no appealable issues arise from the trial court's best-interest ruling. Following a finding of unfitness, the focus shifts to the child. *In re D.T.*, 212 Ill. 2d 347, 364 (2004). "The issue is no longer whether parental rights *can* be terminated; the issue is whether, in light of the child's needs, parental rights *should* be terminated." (Emphases in original.) *Id.* "Accordingly, at a best-interests hearing, the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *Id.*

¶ 44         According to section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2024)), whenever a best-interest determination is required, the following factors shall be considered in the context of the child's age and developmental needs:

> "(a) the physical safety and welfare of the child, including food, shelter, health, and clothing;
>
> (b) the development of the child's identity;
>
> (c) the child's background and ties, including familial, cultural, and religious;
>
> (d) the child's sense of attachments, including:
>
>> (i) where the child actually feels love, attachment, and a sense of being valued (as opposed to where adults believe the child should feel such love, attachment, and a sense of being valued);
>>
>> (ii) the child's sense of security;
>>
>> (iii) the child's sense of familiarity;

(iv) continuity of affection for the child;

(v) the least disruptive placement alternative for the child;

(e) the child's wishes and long-term goals, including the child's wishes regarding available permanency options and the child's wishes regarding maintaining connections with parents, siblings, and other relatives;

(f) the child's community ties, including church, school, and friends;

(g) the child's need for permanence which includes the child's need for stability and continuity of relationships with parent figures, siblings, and other relatives;

(h) the uniqueness of every family and child;

(i) the risks attendant to entering and being in substitute care; and

(j) the preferences of the persons available to care for the child, including willingness to provide permanency to the child, either through subsidized guardianship or through adoption."

See *J.B.*, 2019 IL App (4th) 190537, ¶ 32. "The court's best interest determination [need not] contain an explicit reference to each of these factors, and a reviewing court need not rely on any basis used by the trial court below in affirming its decision." *In re Tajannah O.*, 2014 IL App (1st) 133119, ¶ 19.

¶ 45        The State bears the burden of proving by a preponderance of the evidence that termination of parental rights is in the minor's best interest. *D.T.*, 212 Ill. 2d at 366. "A reviewing court affords great deference to a trial court's best-interest finding because the trial court is in a superior position to view the witnesses and judge their credibility." *J.B.*, 2019 IL App (4th) 190537, ¶ 33. Consequently, we will not reverse a trial court's best-interest finding and termination

of parental rights unless its decision is against the manifest weight of the evidence. *In re C.P.*, 2019 IL App (4th) 190420, ¶ 68.

¶ 46 The evidence shows the best-interest factors support the termination of respondent's parental rights. When the best-interest hearing occurred, R.C. had been living with licensed foster parents and was reported to be doing well. More importantly, his prior behavioral problems subsided and had not resurfaced. The foster parents provided a safe home, medical services, and care for R.C., and they desired to make the relationship permanent. While respondent consistently visited R.C., brought him presents, and took him on outings, she refused to remedy the drug use and domestic violence that caused R.C. to be removed from her care. Based on the evidence presented, the trial court's best-interest finding was not against the manifest weight of the evidence, as the opposite conclusion was not clearly apparent. *In re Jay. H.*, 395 Ill. App. 3d 1063, 1071 (2009). We agree with appellate counsel that no arguably meritorious issue concerning the trial court's best-interest order can be raised on appeal.

¶ 47 Our review of the record and the applicable law lead us to conclude counsel is correct that there are no meritorious issues on appeal. Accordingly, we grant his motion to withdraw.

¶ 48 III. CONCLUSION

¶ 49 For the reasons stated, we grant the motion to withdraw as counsel on appeal and affirm the trial court's judgment.

¶ 50 Affirmed.